# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

NICOLE BRUSHER,

        Plaintiff,

v.

SOUTHGATE LINCOLN, LLC,

        Defendant.

Case No. 2:25-cv-11264

Hon.

---

Angela L. Walker (P67625)
Kelly R. McClintock (P83198)
BLANCHARD & WALKER PLLC
*Attorneys for Plaintiff*
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
walker@bwlawonline.com
mcclintock@bwlawonline.com

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff NICOLE BRUSHER, by and through her attorneys, BLANCHARD & WALKER PLLC, files this Complaint against Defendant SOUTHGATE LINCOLN, LLC ("Southgate Lincoln" or "Defendant"). During her employment, Southgate Lincoln fostered a sexually hostile work environment where male employees were comfortable touching, stalking, and commenting on Ms. Brusher's appearance in the workplace. Ms. Brusher repeatedly made complaints of

sexual harassment, sex-based discrimination, and perceived disability discrimination to management.

Southgate Lincoln discriminated against Ms. Brusher on the basis of her sex, subjected her to a sexually hostile work environment, and retaliated against her in violation of the Michigan Elliot-Larsen Civil Rights Act MCL § 37.2101 *et seq*. ("ELCRA") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Defendants also discriminated against Ms. Brusher on the basis of perceived disability under the Michigan Persons with Disabilities Civil Rights Act MCL § 37.1101 *et seq*. ("PDCRA"). Plaintiff seeks all available relief under the ELCRA, Title VII, and PDCRA.

## PARTIES AND JURISDICTION

1. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and over state claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as Defendant transacts business in the Eastern District of Michigan and Plaintiff performed work for Defendant in the Eastern District of Michigan.

3. Plaintiff Brusher is a resident of Trenton, Michigan in the County of Wayne. Plaintiff performed work for Defendant in Michigan, including in Wayne County, Michigan.

4. Defendant Southgate Lincoln LLC is a Domestic Limited Liability Company, which regularly transacts business throughout the State of Michigan, including in Wayne County, Michigan.

5. This lawsuit includes claims (1) under Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* ("ELCRA"), (2) under the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and under the Pregnancy Discrimination Act of 1978 ("PDA"), and (3) under the Michigan's Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101 *et seq.* ("PDCRA").

6. On or around March 13, 2024, Plaintiff filed Charge No. 23A-2024-01018 with the Michigan Department of Civil Rights ("MDCR") and Equal Employment Opportunity Commission ("EEOC"). The EEOC closed out its investigation and issued a "Notice of Right to Sue" with respect to this charge on February 3, 2025. As such, Plaintiff has exhausted her administrative remedies.

## GENERAL ALLEGATIONS

7. Plaintiff Nicole Brusher began her employment with Defendant as a Finance Manager on or about July 18, 2018.

8. Plaintiff's role required her to assist customers in securing financing when purchasing a car from the dealership.

9. Ms. Brusher had routinely been regarded as an excellent and dependable finance manager, having recently been awarded an all-expenses-paid trip to Costa Rica for performing so well at the dealership.

10. In March 2019, Ms. Brusher received the Lincoln Leader of Excellence award for excelling in customer service and sales. Ms. Brusher was routinely ranked in the top five of her region, year after year, for her impressive performances in sales and customer satisfaction.

11. In or around Fall 2021, Nick Jervanian was hired by Defendants as a Service Advisor.

12. Mr. Jervanian sexually assaulted and sexually harassed Ms. Brusher on multiple occasions. Each time, Ms. Brusher reported the incidents to her supervisor, Ms. Kujala.

13. Once, Mr. Jervanian wrapped his arms around Ms. Brusher, as he stood behind her, and grabbed one of her arms and forced Ms. Brushers hand to rub his penis, over his pants. Horrified, Ms. Brusher, immediately reported this to Defendant.

14. Instead of taking any sort of prompt and remedial action following Ms. Brusher's report of sexual assault and sexual harassment, Defendant's solution was to ask Mr. Jervanian not to walk past a white line near Ms. Brusher's office. On

information and belief, no further action was taken against Mr. Jervanian and he was never disciplined for the sexual assault and sexual harassment.

15. After the incident where Ms. Brusher was forced to touch Mr. Jervanian's penis, he came up behind Ms. Brusher for a second time. He groped her pelvic area, hips and stomach, rubbing his hands over her, and repeatedly told Ms. Brusher that she was "sexy" and "hot."

16. Ms. Brusher threw Mr. Jervanian's hands and arms off of her and again, immediately reported the sexual assault to Defendant.

17. Mr. Jervanian's sexually aggressive behaviors did not stop. In fact, Mr. Jervanian began standing just behind the white line to stare at Ms. Brusher in her office and he also began following her when she needed to use the restroom. Mr. Jervanian would routinely follow Ms. Brusher to the door of the women's restroom and stop at the drinking fountain just outside of the women's restroom door while Ms. Brusher used the facilities.

18. Mr. Jervanian's persistent stalking of Ms. Brusher around the dealership and especially near the women's bathroom, caused Ms. Brusher to begin using a bathroom located in an entirely different building.

19. In fact, during the months of October of November of 2021, Ms. Brusher was forced to walk outside and use the restroom in the "preowned building," in order to avoid being followed into the restroom by Mr. Jervanian.

20. Incredulously, Ms. Brusher was told by Defendant to "stay away from that bathroom," in the showroom, which was the only bathroom in the building where she worked.

21. In November 2021, after Ms. Brusher had already complained about numerous sexual assaults and instances of sexual harassment by Mr. Jervanian, he physically attacked Ms. Brusher when she arrived to work by grabbing her arm, twisting it and screaming, "Fuck Southgate Lincoln" in her face.

22. Ms. Brusher immediately notified Defendant of the incident.

23. Defendant took no disciplinary action as a result of these allegations and Mr. Jervanian's sexual attacks continued to escalate.

24. When the General Manager saw Mr. Jervanian standing behind the white line and staring into Ms. Brusher's office, the General Manager would make Ms. Brusher get up and *leave her office* to go "hide" in the sales room, another office located next to her own.

25. On information and belief, Mr. Jervanian also reached his arm around another female coworker, grabbed her breast and said "oops, I grabbed your boob" to her afterward. The female coworker made a complaint to the General Manager, Ms. Kujala, in or around November 2021.

26. Nick Jervanian continued to work at Southgate Lincoln for many weeks after management was provided with multiple written reports of his conduct in 2021.

27. On information and belief, even after multiple reports of sexual assault and sexual harassment, Mr. Jervanian was allowed to quit without any resolution provided by management at Southgate Lincoln.

28. Even after Mr. Jervanian was allowed to resign, he continued to stalk Ms. Brusher at the dealership, by parking his truck outside of the window to Ms. Brusher's office.

29. After Ms. Brusher reported this disturbing behavior to Defendant, she was, again, told to go "hide" in the sales room.

30. Instead of contacting the police, Defendant's asked their own salespeople to stand guard by the door in case Mr. Jervanian came into the dealership to hurt Ms. Brusher once more. These instances of stalking – after Mr. Jervanian was allowed to resign – occurred at least 3-5 times during late 2021 and early 2022.

31. Upon information and belief, Ms. Brusher estimates that Mr. Jervanian followed her as she left the dealership in her car on her drive home at least 5-10 times during late 2021 through early 2022.

32. While Ms. Brusher was told to write everything down, and that the same would be "added to her file," not one of these incidents was included in Ms. Brusher's personnel file provided to counsel in the fall of 2024.

33. In the beginning of March 2024, Jim Arminiak was hired as Defendant's new Used Car Manager.

34. Shortly thereafter, Ms. Brusher was alerted by co-workers that Mr. Arminiak had made sexist and discriminatory comments about her to other employees.

35. One employee informed Ms. Brusher that he witnessed Mr. Arminiak refer to her as a "cunt," and discussed plans to have Ms. Brusher terminated.

36. Another time, while discussing Ms. Brusher's whereabouts, Mr. Arminiak referred to Ms. Brusher as a "fucking cunt."

37. Mr. Arminiak discriminated against Ms. Brusher based on her perceived pregnancy. When an employee informed Mr. Arminiak that Ms. Brusher was at an ultrasound appointment and would return shortly, Mr. Arminiak said Ms. Brusher, "should have kept her legs shut." In referring to Defendant's hiring practices, Mr. Arminiak said, "that's what they get for hiring women."

38. On or about March 11, 2024, when Ms. Brusher learned about Mr. Arminiak's comments, she met with the owner of the dealership, Chris Oben, and General Manager, Elizabeth Kujala, to report the Used Car Manager's misogynistic commentary and discrimination.

39. After Ms. Brusher reported Mr. Arminiak's discriminatory comments, the company once again failed to take prompt remedial action to stop the discriminatory conduct from occurring.

40. Upon information and belief, Mr. Arminiak continued to make highly offensive and discriminatory remarks based on her sex and his assumption she was pregnant.

41. On March 14, 2024, Ms. Brusher alerted Defendant that, in light of their mishandling of her multiple reports of sexual and gender-based harassment throughout the years, she had made a report to the Michigan Department of Civil Rights (MDCR) outlining the discrimination she faced.

42. Upon learning of Ms. Brusher's report to MDCR the Owner, Mr. Oben, and General Manager of the dealership, Ms. Kujala, called Ms. Brusher down to the Owner's office and demanded to know why she had reported them.

43. In the coming days, in direct retaliation for Ms. Brusher's complaint to the MDCR, Defendants began writing up petty, and even patently false documentation of alleged performance issues, which were backdated and added to Ms. Brusher's personnel file.

44. Defendants even forged Ms. Brusher's signature on some of the false disciplinary write-ups included in her personnel file.

45. Defendant quickly fired Ms. Brusher in retaliation for engaging in protected activity on April 10, 2024.

### Count I: Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964, As Amended (42 U.S.C. § 2000e *et seq*.)

46. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

47. At all material times, Plaintiff was an employee, and Defendant was her employer, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII").

48. Defendant has discriminated against Plaintiff within the meaning of Title VII by intentionally discriminating against her and subjecting her to adverse employment decisions based on her sex, female.

49. Plaintiff's sex was a motivating factor in Defendant's decision not to take seriously her complaints of harassment and assault in the workplace.

50. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff sustained damages including but not limited to emotion pain, suffering, and mental anguish.

### Count II: Sexually Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, As Amended (42 U.S.C. § 2000e *et seq*.)

51. Plaintiff Brusher realleges and incorporates by reference the above paragraphs as fully set forth herein.

52. At all material times, Plaintiff was an employee, and Defendant was her employer, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII").

53. Defendant has discriminated against Plaintiff within the meaning of Title VII by subjecting her to unwelcome sexual harassment and a sexually hostile work environment.

54. Plaintiff was subjected to harassment at her work based on her sex, female.

55. The harassment affected a term, condition, or privilege of Plaintiff's employment.

56. Defendant knew or should have known of the harassment but failed to take remedial action based on Plaintiff's complaints of sexual harassment and sexual assault in the workplace.

57. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff sustained damages including but not limited to emotion pain, suffering, and mental anguish.

### Count III: Perceived Pregnancy Discrimination Under the Pregnancy Discrimination Act (PDA)

58. Plaintiff realleges and incorporates by reference her above allegations.

59. At all material times, Ms. Brusher was an employee, and Defendant was her employer, covered by and within the meaning of the PDA.

60. Defendant subjected Plaintiff to adverse employment actions within the meaning of the PDA based on her perceived pregnancy.

61. Ms. Brusher's perceived pregnancy motivated Defendant's conduct.

62.   As a direct and proximate result of these actions, Ms. Brusher was harmed, and continues to be harmed, in that she has suffered economic loss, damage to her professional reputation, and emotional distress.

## Count IV: Retaliation in Violation of Title VII of the Civil Rights Act of 1964, As Amended
**(42 U.S.C. § 2000e *et seq*)**

63.   Plaintiff realleges and incorporates by reference her above allegations.

64.   At all material times, Plaintiff was an employee, and Defendant was her employer, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII").

65.   Defendant has retaliated against Plaintiff within the meaning of Title VII by subjecting her to the adverse employment action of termination based as a consequence of her engaging in a protected activity.

66.   As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff sustained damages including but not limited to emotion pain, suffering, and mental anguish.

## Count V: Sex Discrimination
**(Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq)**

67.   Plaintiff adopts the previous paragraphs by reference.

68.   At all material times, Plaintiff was an employee, and Defendant was her employer, covered by and within the meaning of the ELCRA. See MCL 37.2201 et seq.

69. Defendant has discriminated against Plaintiff within the meaning of the ELCRA by subjecting her to adverse employment action based on her sex.

70. Plaintiff's sex, female, motivated the discriminatory conduct by Defendant.

71. As a result, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic loss, damage to her professional reputation, emotional distress, and damage to her health.

### Count VI: Sexually Hostile Work Environment
### (Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq)

72. Plaintiff Brusher realleges and incorporates by reference the above paragraphs as fully set forth herein.

73. At all material times, Ms. Brusher was an employee, and Defendant was responsible as her employer covered by and within the meaning of the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq* ("ELCRA").

74. Defendant discriminated against Ms. Brusher within the meaning of the ELCRA by creating a sexually hostile work environment where Ms. Brusher was sexually touched without her consent and subjected to sexually disparaging commentary by the used car manager.

75. As a direct and proximate result of Defendant's wrongful acts and omissions, Ms. Brusher was harmed, and continues to be harmed, in that she has

suffered economic loss, damage to her professional reputation, emotional distress, and damage to her health.

<div align="center">

**Count VI: Retaliation**
**(Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq*)**

</div>

76. Plaintiff realleges and incorporates by reference her above allegations.

77. At all material times, Ms. Brusher was an employee, and Defendant was her employer, covered by and within the meaning of the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq* ("ELCRA").

78. Plaintiff engaged in protected activity under the ELCRA by reporting sex discrimination to Defendant.

79. Defendant subjected Plaintiff to adverse employment actions in retaliation for engaging in protected activity.

80. As a direct and proximate result of Defendant's wrongful acts and omissions, Ms. Brusher was harmed, and continues to be harmed, in that she has suffered economic loss, damage to her professional reputation, emotional distress, and damage to her health.

<div align="center">

**Count VII: Discrimination Based on a Perceived Disability**
**(Michigan Persons with a Disability Civil Rights Act, MCL - Section 37.1101)**

</div>

81. Plaintiff realleges and incorporates by reference her above allegations.

82. Defendant perceived Plaintiff as a person with a disability, believing she was pregnant in early 2024.

83. Plaintiff was not pregnant and was qualified to perform the requirements of her job without accommodations.

84. In violation of the PDCRA, Plaintiff was terminated and suffered other adverse employment actions due to her perceived disability by her employer.

85. As a direct and proximate result of Defendant's wrongful acts and omissions, Ms. Brusher was harmed, and continues to be harmed, in that she has suffered economic loss, damage to her professional reputation, emotional distress, and damage to her health.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff seeks actual damages for humiliation, emotional distress, lost wages (including front pay, back pay, and benefits), punitive damages, exemplary damages, costs, attorney's fees, and all other relief in law or equity that this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff requests a trial by jury on her claims.

                                        Respectfully Submitted,

                                        /s/ Kelly R. McClintock
                                        Angela L. Walker (P67625)
                                        Kelly R. McClintock (P83198)
                                        BLANCHARD & WALKER, PLLC
                                        *Attorneys for Plaintiff*
                                        221 N. Main Street, Suite 300
Dated: May 1, 2025                  Ann Arbor, MI 48104