UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE BRUSHER,

                    Plaintiff,                       Case No. 2:25-cv-11264

v.                                     Honorable Susan K. DeClercq
                                              United States District Judge

SOUTHGATE LINCOLN, LLC,

                    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS
(ECF No. 9)**

For nearly six years, Plaintiff Nicole Brusher worked for Defendant Southgate Lincoln, LLC ("Southgate Lincoln"), a used-car dealership in Southgate, Michigan. She alleges that in 2021 and 2022, a male coworker sexually harassed and assaulted her on several occasions. That coworker quit and the harassment stopped, but two years later, after Southgate Lincoln hired a male manager, Brusher alleges that the manager discriminated against her based on her sex. Brusher reported the discrimination and was fired a month later. So she sued Southgate Lincoln, alleging various claims of employment discrimination, retaliation, and a hostile work environment.

Now, Southgate Lincoln seeks partial dismissal of two of Brusher's claims, arguing that she may not bring any Title VII claims involving the alleged sexual

assault and harassment in 2021 and 2022 because she did not exhaust her administrative remedies as to those claims. As explained below, Southgate Lincoln's motion will be granted, and Brusher's Title VII sex discrimination and hostile environment claims will be dismissed in part.

## I. BACKGROUND

In July 2018, Brusher began working as a finance manager at Southgate Lincoln under the supervision of general manager Elizabeth Kujala. *See* ECF No. 7 at PageID.117-18. As a finance manager, Brusher helped customers secure financing for new car purchases. *Id.* at PageID.117.

Eight months after she started, Brusher won the "Lincoln Leader of Excellence Award" for her customer service and sales performance, and she later won a trip to Costa Rica for her job performance as well. *Id.* at PageID.118. Indeed, Brusher says she was consistently ranked "top five in her region" for customer satisfaction and sales performance. *Id.*

In the fall of 2021, Southgate Lincoln hired Nick Jervanian[1] to work as a service advisor. *Id.* Shortly after Jervanian was hired, Brusher alleges that he began sexually harassing and assaulting her throughout late 2021 and early 2022. *Id.*

---

[1] Southgate Lincoln uses a different spelling of Jervanian's last name: Jevahirian. *See* ECF No. 9 at PageID.165. It is not clear at this stage in the litigation which spelling is correct so, for consistency, this Court will use the spelling in Plaintiff's amended complaint (Jervanian) throughout this opinion and order. *See generally* ECF No. 7.

Brusher alleges that the first instance of Jervanian's harassment and assault occurred when he wrapped his arms around her while standing behind her, "grabbed one of her arms and forced [her] hand to rub his penis over his pants." *Id.* Brusher immediately reported the incident to Kujala, and in response, Southgate Lincoln asked Jervanian not to cross a white line on the dealership floor near Brusher's office. *Id.*

But Jervanian's harassment and assaults did not stop. *See id.* at PageID.118–120. Jervanian approached Brusher from behind again, this time "grop[ing] her pelvic area, hips, and stomach," and told her she was "sexy" and "hot." *Id.* at PageID.119. Brusher again immediately reported the incident. *Id.* Around this same time, Jervanian started standing "just behind the white line to stare at [Brusher] in her office," and he began following her to the bathroom. *Id.* When Brusher reported this to Southgate Lincoln, she was told to stay away from the bathroom, so she started to use a bathroom in a different building instead. *Id.* at PageID.119–20. And whenever Kujala would see Jervanian standing behind the white line staring at Brusher, she would tell Brusher to leave her office and go hide in the sales room. *Id.* at PageID.120.

In November 2021, Jervanian "physically attacked" Brusher in the parking lot by "grabbing her arm, twisting it, and screaming 'fuck Southgate Lincoln' in her face." *Id.* Brusher reported this to Southgate Lincoln, but no action was taken. *Id.*

Around the same time, another female Southgate Lincoln employee reported Jervanian to management, alleging that Jervanian had grabbed her breast from behind. *Id.* Despite these reports, Jervanian continued to work at Southgate Lincoln for "many weeks," until he quit without resolution of any of the complaints against him. *Id.* at PageID.120–21.

But even after Jervanian quit, his harassment of Brusher did not end. Brusher alleges that Jervanian would park his truck outside the window of her dealership office "at least 3-5 times" during late 2021 and early 2022. *Id.* at PageID.121. When Brusher reported this to Southgate Lincoln, she was instructed to go hide in the sales room and Southgate Lincoln directed other employees to "stand guard by the door in case [Jervanian] came into the dealership." *Id.* Brusher further alleges that Jervanian followed her home from work "at least 5–10 times" during this same time period. *Id.* Southgate Lincoln instructed Brusher to write everything down for it to be added to her personnel file.[2] *Id.* After early 2022, however, Brusher does not allege that there were any more incidents involving Jervanian.

Then, about two years after the incidents with Jervanian, Southgate Lincoln hired Jim Arminiak as a used-car manager in March 2024. *Id.* Brusher alleges that shortly after Arminiak was hired, some of her coworkers told her that Arminiak made

---

[2] Brusher notes that despite this, none of the incidents she made reports about were included in the personnel file she received from Southgate Lincoln's counsel in the fall of 2024. ECF No. 7 at PageID.121.

"sexist and discriminatory comments about her to other employees," including calling her a "fucking cunt" and saying that he had plans to get Brusher fired. *Id.* at PageID.122. Arminiak also commented that Brusher "should have kept her legs shut," assuming she was pregnant when a coworker informed him that Brusher was not available because she was at an ultrasound appointment. *Id.*

On March 11, 2024, Brusher learned of Arminiak's comments and reported them to Kujala and the owner of the dealership, Chris Oben, but no action was taken, and Arminiak continued to make offensive and discriminatory remarks about Brusher based on her sex and his assumption that she was pregnant. *Id.* at PageID.122–23. So Brusher filed a charge with the Michigan Department of Civil Rights (MDCR) about Arminiak's comments. *Id.* at PageID.123. On March 14, 2024, Brusher informed Southgate Lincoln that she had filed a charge with the MDCR. *Id.*

Brusher's original MDCR charge alleged that she "was sexually harassed by [her] coworker" on March 7, 2024 "when he made unwanted sexual comments about [her] and called [her] a sexist name." ECF No. 11-1 at PageID.246. Brusher further alleged that she was "subjected to other terms and conditions of employment on March 15, 2024, in retaliation for engaging in a protected activity" when her "supervisor locked cabinets [she] need[ed] to access to perform [her] job duties effectively and efficiently." *Id.*

After informing Southgate Lincoln about the MDCR charge, Brusher was called to a meeting with Oben and Kujala. ECF No. 7 at PageID.124. During the meeting, Oben asked why she had reported them. *Id.* After this meeting, Southgate Lincoln began documenting alleged performance issues, which Brusher alleges were petty or patently untrue, several of which were backdated. *Id.* Then, on April 10, 2024, Brusher was fired.[3] *Id.*

Around this time, Brusher added two more allegations to her MDCR charge. *See* ECF No. 9-1 at PageID.181. Specifically, she alleged that on April 3, 2024, she "was written up" by Kujala and that the write up was a retaliatory disciplinary action. *Id.* Brusher further alleged that on April 10, 2024, she was "discharged in retaliation for engaging in a protected activity." *Id.*

In November 2024, the MDCR dismissed Brusher's MDCR charge because Brusher had "submitted a written request for withdrawal indicating that the matter will be pursued in court." ECF No. 9-2 at PageID.184. In February 2025, the Equal

---

[3] Notably, Southgate Lincoln alleges in its motion to dismiss that it fired Brusher "after she fraudulently whited out the mileage on two contracts for ESP stipulations and handwrote the new expiration milage to deceive lenders." ECF No. 9 at PageID.164. However, at this motion to dismiss stage, this Court may only consider the facts as provided by Brusher in her amended complaint. *See Glen v. Kraszewski*, 776 F. Supp. 3d 585, 590 (E.D. Mich. 2025) (noting that at the motion-to-dismiss stage, courts may consider only (1) facts presented in the complaint and its attached exhibits, (2) public records, and (3) exhibits attached to a motion to dismiss that are referred to in the complaint and central to the claims therein).

Employment Opportunity Commission (EEOC) issued a right-to-sue letter, *id.* at PageID.185, and three months later, Brusher sued Southgate Lincoln, ECF No. 1.

Two months later, Southgate Lincoln filed a motion for partial dismissal, ECF No. 5, and Brusher responded by filing an amended complaint, ECF No. 7. Brusher's amended complaint brings eight claims against Southgate Lincoln:

| Count | Claim |
|---|---|
| I | Sex discrimination in violation of Title VII |
| II | "Sexually hostile work environment" in violation of Title VII |
| III | Perceived pregnancy discrimination under Pregnancy Discrimination Act |
| IV | Retaliation in violation of Title VII |
| V | Sex discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act |
| VI | "Sexually hostile work environment" in violation of Michigan's Elliot-Larsen Civil Rights Act |
| VII[4] | Retaliation in violation of Michigan's Elliot-Larsen Civil Rights Act |
| VIII | Discrimination based on a perceived disability in violation of Michigan's Persons with Disability Civil Rights Act |

*Id.* at PageID.124–30.

On August 26, 2025, Southgate Lincoln filed a new partial motion to dismiss, seeking dismissal of counts I and II in part, and full dismissal of Count III. ECF No. 9. Brusher opposed Southgate Lincoln's motion as it related to Counts I and II, but

---

[4] The amended complaint appears to misnumber the counts. This Count is labeled "Count VI," but it appears to this Court it should be "Count VII." *See* ECF No. 7 at PageID.129.

agreed to dismiss Count III. ECF Nos. 11; 14. Accordingly, only Counts I and II are before this Court for purposes of this motion.

## II. LEGAL STANDARD

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell v. Dollar Tree, Inc.*, No. 24-13259, 2025 WL 3252656, at *4 n. 4 (E.D. Mich. Nov. 21, 2025) ("[F]ailure to exhaust [administrative remedies under Title VII's exhaustion requirement] is a basis to dismiss under Rule 12(b)(6) for failure to state a claim.").

When considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). Otherwise, the Court must grant the motion to dismiss. *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

Southgate Lincoln argues that both of Brusher's Title VII claims should be dismissed in part to the extent that they encompass allegations of sexual discrimination and a hostile work environment related to Jervanian's alleged harassment because Brusher did not exhaust her administrative remedies as to such claims. ECF No. 9 at PageID.169–70. Brusher does not dispute that she did not file a charge with the EEOC within 300 days of Jervanian's alleged harassment and assault, but she alleges that it should be considered in this lawsuit nonetheless under the continuing violations doctrine. ECF No. 11 at PageID.239–40.

### A. Legal Standard

### 1. Exhaustion of Administrative Remedies in the Title VII Context

A plaintiff bringing a Title VII claim must first exhaust their administrative remedies by filing a charge with the EEOC within 180 days after the allegedly wrongful conduct. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 827 (6th Cir. 2019) (noting that "a protected individual may not simply sue a recalcitrant employer under Title VII without having first brought the dispute before the EEOC for resolution"). However, in Michigan, which is a "deferral jurisdiction," the plaintiff may alternatively file such a charge with the Michigan Department of Civil Rights (MDCR) within 180 days of the allegedly wrongful conduct, and the time for filing such a charge with the EEOC is extended

to 300 days after the allegedly wrongful conduct. *See Logan*, 939 F.3d at 827 (citing 42 U.S.C. § 2000e-5(d)–(e) and 29 C.F.R. § 1601.13). This exhaustion requirement "serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361–62 (6th Cir. 2010) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974)).

"Typically, a Title VII claim must be based on the issues complained of in an EEOC charge." *Hamlet v. Shelby Cnty. Gov't*, No. 2:24-CV-02250-SHL-CGC, 2025 WL 2690568, at *3 (W.D. Tenn. Sept. 19, 2025) (citing *Younis*, 610 F.3d at 361). Indeed, "allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role." *Younis*, 610 F.3d at 362.

### 2. The Continuing Violations Doctrine

In the Title VII context, "[t]he 'continuing violations' doctrine is an equitable doctrine which tolls the" time to file a charge with the EEOC or relevant state agency. *Mustafa v. Ford Motor Co.*, 691 F. Supp. 3d 796, 801 (E.D. Mich. 2023) (quoting *Austion v. City of Clarksville*, 244 F. App'x 639, 647 (6th Cir. 2007)). As a result, the continuing violations doctrine allows a plaintiff to raise claims based on acts of

discrimination, retaliation, or a hostile work environment that occurred outside the filing period, so long as they are "continuing acts." *See Austion*, 244 F. App'x at 647.

The continuing violations doctrine applies only in two narrow circumstances: (1) "when there [i]s evidence of discrete present discriminatory activity" in the context of a hostile work environment claim only;[5] and (2) "when there [i]s a standard operating procedure of discrimination against a class that was established over time." *Bouye v. Bruce*, 61 F.4th 485, 492 (6th Cir. 2023) (citing *Sharpe v. Cureton*, 319 F.3d 259, 266–67 (6th Cir. 2003)); *see also Agrawal v. Montemagno*, 574 F. App'x 570, 575 (6th Cir. 2014) (noting the first circumstance "applies only to hostile-environment claims.").

A plaintiff seeking to apply the continuing violations doctrine under the first circumstance in a hostile work environment claim must show that at least one act contributing to their underlying hostile work environment claim occurred within the limitations period. *See Morgan*, 536 U.S. at 122 (holding that a hostile work

---

[5] Before 2002, this first circumstance was not limited to only hostile work environment claims. But, in 2002, the Supreme Court held that plaintiffs could not use this first circumstance to invoke the continuing violations doctrine "to allow recovery for acts that occurred outside the filing period" when those acts were "discrete acts of discrimination or retaliation[.]" *Sharpe*, 319 F.3d at 267 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)). The *Morgan* Court reached this conclusion by reasoning that discrete acts of discrimination and retaliation—unlike acts contributing to a hostile work environment—are "easy to identify" when they occur, and thus do not warrant an extension of the statute of limitations. *Morgan*, 536 U.S. at 114.

environment claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice *and at least one act falls within the time period.*" (emphasis added)); *see also El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 464 (6th Cir. 2006). The act within the limitations period must be similar to past acts outside the limitations period and continuing from those past acts outside the limitations period. *El-Zabet*, 211 F. App'x at 465.

A plaintiff seeking to invoke the continuing violations doctrine under the second circumstance—by pointing to a standard operating procedure of intentional discrimination against a class over time—"must demonstrate something more than the existence of discriminatory treatment in his case." *Sharpe,* 319 F.3d at 268 (internal quotation marks and citation omitted). And the Sixth Circuit has explained that the second circumstance that warrants application of the continuing violations doctrine is "strictly construed and is satisfied only where the defendant has a known policy or rule supporting discrimination." *Austion*, 244 F. App'x at 647.

### B. Discussion

*1. Count I: Title VII Sex Discrimination*

Brusher's Title VII sex discrimination claim will be dismissed in part to the extent it alleges sexual discrimination based upon Jervanian's 2021 and 2022 harassment because Brusher did not exhaust her administrative remedies regarding those allegations. Although Brusher alleges the 2021 and 2022 harassment by

Jervanian may be included in Count I under the continuing violations doctrine, *see* ECF No. 11 at PageID.237–41, she does not allege that Southgate Lincoln had "a standard operating procedure of discrimination against a class"—in this case, women—"that was established over time." *Bouye*, 61 F.4th at 492. Nor has she alleged that Southgate Lincoln maintained a "known policy or rule supporting [sex] discrimination." *Austion*, 244 F. App'x at 647. Thus, the continuing violations doctrine does not apply to her Title VII sex discrimination claim based upon Jervanian's harassment. *See Thurman v. City of Frankfort*, No. 3:21-cv-00013-GFVT, 2024 WL 5161876, at *4 (E.D. Ky. Dec. 17, 2024) (finding continuing violations doctrine did not apply where the plaintiff did not provide evidence that the defendants "maintain[ed] a known policy or rule supporting race discrimination."); *Katz v. Vill. of Beverly Hills*, No. 13-11568, 2016 WL 1259086, at *6 (E.D. Mich. Mar. 31, 2016), *aff'd*, 677 F. App'x 232 (6th Cir. 2017) (finding continuing violations doctrine did not apply absent a demonstration that intentional discrimination against a particular class was a standard operating procedure of the defendant).

### 2. Count II: Title VII Hostile Work Environment

Brusher's Title VII hostile work environment claim will also be dismissed in part to the extent it is based upon Jervanian's 2021 and 2022 harassment and assault, though for slightly different reasons. Like in Count I, Brusher has not alleged "a

standard operating procedure of discrimination against a class that was established over time." *Bouye*, 61 F.4th at 492. But because Count II is a hostile work environment claim, Brusher may invoke the continuing violations doctrine by showing that the 2021 and 2022 harassment by Jervanian and 2024 incidents with Arminiak are "evidence of present discriminatory activity" that comprises a hostile work environment. *Id.*

As the Supreme Court explained in *Morgan*, "[h]ostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. Thus, in such claims, the unlawful employment practice "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* Therefore, a plaintiff may invoke the continuing violations doctrine, and their EEOC charge will be considered timely, if it is filed "within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 118. But this application of the continuing violations doctrine only applies if the acts are part of the same hostile work environment claim. *See id.* (explaining that for the continuing violations doctrine to apply, the activity contemplated outside of the limitations period must be part of "the same hostile environment claim" which falls within the limitations period); *see also Tate, et al. v. City of Columbus, et al*, No. 2:23-CV-492, 2024 WL 6968775, at *2 (S.D. Ohio May

- 14 -

17, 2024) (finding continuing violations doctrine inapplicable where the Plaintiff alleges two factually "distinct bases of a hostile work environment" claim, as opposed to an ongoing, single basis for a hostile work environment claim).

Here, Brusher attempts to argue that the incidents with Jervanian in 2021 and 2022 and the incidents with Arminiak in March and April 2024 are "part of a continuing pattern of conduct" by Southgate Lincoln. ECF No. 11 at PageID.241. But even *assuming* that the alleged hostile work environment incidents were of a similar nature, there is no question that the alleged incidents were not continuing, thus the continuing violations doctrine does not apply. To be sure, Brusher does not allege that *anything* occurred between early 2022 and early 2024, let alone anything that might contribute to a hostile work environment. *See generally* ECF No. 7. And this two-year gap is fatal to Brusher's attempt to invoke the continuing violations doctrine. Indeed, "courts across the circuits have found that the continuing violation[s] doctrine cannot be used to tie together [] hostile environment claims separated by large gaps in time." *Williams v. Autokiniton*, No. 23-cv-12404, 2026 WL 103979, at *9 (E.D. Mich. Jan. 14, 2026) (collecting cases); *see also El-Zabet*, 211 F. App'x at 465 (6th Cir. 2006) (finding an eleven-month gap between allegedly harassing incident and discriminatory conduct too long to support application of the continuing violations doctrine); *Wilson v. Gen. Mills Sales, Inc.*, No. 1:17-cv-1072, 2021 WL 5762586, at *13 (W.D. Mich. Apr. 23, 2021) (finding that a three-year gap

during which "no harassment or discrimination of any kind" was alleged foreclosed application of the continuing violations doctrine).

At bottom, although Jervanian's alleged assault and harassment in 2021 and 2022 is certainly troubling, it is not actionable in this lawsuit because Brusher did not exhaust her administrative remedies relating to such claims. And the continuing violations doctrine does not save her from her failure to timely exhaust her administrative remedies relating to Jervanian's conduct and Southgate Lincoln's responses to it. Accordingly, her Title VII sex discrimination and hostile work environment claims will be dismissed in part to the extent that the claims are based upon conduct by Jervanian in 2021 and 2022.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 9, is **GRANTED**.

Further, it is **ORDERED** that Count I and Count II of Plaintiff's Amended Complaint, ECF No. 7, are **DISMISSED IN PART** to the extent that they allege sex discrimination or a hostile work environment based upon conduct by Jervanian in 2021 and 2022.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: February 18, 2026

- 16 -